UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADVANCED TECHNOLOGY CORPORATION, INC. | |
| Plaintiff | |
| v. | CIVIL ACTION NO. 1:12-cv-10171-JLT |
| INSTRON, INC., TINIUS OLSEN INTERNATIONAL CO., MTS SYSTEMS COPORATION, and ASTM INTERNATIONAL | |
| Defendants | |

**DEFENDANT TINIUS OLSEN INTERNATIONAL COMPANY'S[1]
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Harvey Weiner, BBO# 519840
Kevin C. Cain, BBO# 550055
Jill M. Brannelly, BBO# 655474
Peabody & Arnold, LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100

Attorneys for Tinius Olsen International
Company

---

[1] Plaintiff's Complaint incorrectly names as a defendant Tinius Olsen International Co., the proper name being Tinius Olsen International Company. Furthermore, Plaintiff has identified the wrong company under the mistaken belief that it employed Earl Ruth, John Millane, and Robert Strimel. Those individuals were, in fact, employees of Tinius Olsen Testing Machine Company, a Pennsylvania corporation.

# TABLE OF CONTENTS

INTRODUCTION...........................................................................................1

FACTS.........................................................................................................1

ARGUMENT.................................................................................................5

I.     Plaintiff Fails To Allege A Plausible Conspiracy (Count I)............................5

     A.     Plaintiff Fails To Allege Sufficient Facts To Establish An Agreement.......................................................................................5

          1.     Plaintiff's conclusory allegations of conspiracy should be ignored..................................................................6

          2.     Plaintiff fails to allege any direct evidence of an illegal Agreement............................................................8

          3.     Defendants' parallel conduct is not indirect evidence of a conspiracy..........................................................9

          4.     Plaintiff fails to allege any circumstantial evidence of conspiracy known as "plus factors".........................11

          5.     Tinius Olsen's participation in ASTM and ISO is not evidence of conspiracy....................................12

          6.     The facts alleged are contrary to the existence of a conspiracy......................................................14

     B.     Plaintiff Fails To Allege Any Antitrust Injury...........................................14

     C.     Plaintiff's Conspiracy Claim is Time-Barred...........................................15

II.     Plaintiff Fails to State a Claim Under G.L. c. 93A (Count II)............................16

     A.     Plaintiff's 93A Claim Is Time-Barred...........................................16

     B.     Plaintiff's 93A Claim Fails Because Plaintiff Fails To Allege A Conspiracy.......................................................................17

     C.     No Conduct Occurred Primarily And Substantially In Massachusetts..............17

III.     The Commercial Disparagement Claim Must Be Dismissed  Because Plaintiff

Fails To Allege Tinius Olsen Published the Allegedly Disparaging Report
(Count III)……………………………………………………………….................18

CONCLUSION………………………………………………………………............19

**INTRODUCTION**

Plaintiff failed to obtain a standard from both ASTM International ("ASTM") and the

International Standards Organization ("ISO") for its nondestructive tensile test method.  Plaintiff

assumes that Defendants, who are part of the destructive tensile testing market and are voting

members of ASTM and ISO, must have conspired to prevent Plaintiff from receiving a standard.

Because Plaintiff fails to allege any facts to establish an illegal agreement between Defendants,

because Plaintiff's conspiracy claim is based solely on parallel conduct, and because Plaintiff's

conspiracy claim is time-barred, Plaintiff fails to state a claim for relief under Section 1 of the

Sherman Act.  Plaintiff's G.L. c. 93A claim, based solely on the alleged conspiracy, must also be

dismissed because Plaintiff fails to allege a conspiracy claim, because Plaintiff fails to allege the

deceptive conduct occurred primarily and substantially in Massachusetts, and because the claim

is time-barred.  Finally, Plaintiff's commercial disparagement claim must be dismissed as to

Tinius Olsen International Company ("Tinius Olsen") because there is no allegation that Tinius

Olsen published the allegedly disparaging report.

**FACTS[2]**

Development Of ABI Test Method

In the late 1980s, Fahmy Haggag ("Haggag") developed an automated ball indentation

("ABI") test method to measure tensile properties and fracture toughness of materials and

---

[2] The following facts are taken from Plaintiff's Complaint filed on January 30, 2012, which is
actually an amended complaint though not titled as such, and presumed to be true for purposes of
this Rule 12(b)(6) Motion only.  Plaintiff's Complaint fails to comply with Fed. R. of Civ. Pro.
Rule 8(a) because it contains 133 paragraphs that are confused, ambiguous, vague, repetitive,
conclusory in nature, unintelligible, and difficult to understand.  For the Court's convenience, the
facts section attempts to organize, unmuddle, and eliminate the repetitiveness of the allegations
pled against Tinius Olsen with augmentation only where necessary for content and/or clarity.
All of the paragraph citations in this brief are to paragraphs in Plaintiff's Complaint.

components. (¶24).  In 1989, Haggag patented the equipment that performs the ABI test and

formed Advanced Technology Corporation, Inc. ("Plaintiff") to commercialize the technology.

(¶25).  Plaintiff has the only equipment that employs ABI technology.  (¶40).

Defendants allegedly dominate the destructive tensile testing market, which is covered by

the ASTM Standard Test Method E8.  (¶31).  Plaintiff's ABI test has two advantages over

Defendants' destructive test: (1) it is nondestructive and allows testing of in-service pipes; and

(2) it is fast.  (¶25).  Additionally, the ABI equipment can be reconfigured to perform the

destructive testing that Defendants perform.  (¶26).

Within three years of Plaintiff introducing the ABI test method to the market, several

pipeline operators adopted Plaintiff's ABI and tensile software programs exclusively.  (¶28).

Organizations, including the U.S. Departments of Energy and Transportation, have said that they

require an ASTM standard for the technique to accept ABI testing.  (¶28).

Plaintiff's Attempts To Obtain An ASTM Standard For ABI Test Method

In 2000, ASTM formed a subcommittee, E28.06.14, for the ABI test method.  (¶47).  In

December 2002, the ABI test method received a formal ballot for peers to vote on the proposed

ABI standard.  (¶47).  Under ASTM regulations, a single negative votes stops the progress of a

draft standard.  (¶57).  Earl Ruth ("Ruth"), vice president of Tinius Olsen and chair of E28, was

one of the three negative votes.  (¶¶48, 52).  Ruth voted against the ABI standard because it did

not have precision values from a round robin ("RR") study.  (¶52).

Thereafter, a RR study was completed and a report was submitted to ASTM on April 11,

2003.  (¶53).  A copy of the next draft of the ABI standard including a precision statement was

submitted to Ruth for his comments.  (¶54).  Ruth proposed deleting the precision statement,

which the ABI task group refused to do.  (¶54).

In January 2006, Ruth voted against the proposed ABI standard:

> In general I do not think it is appropriate for us to create a
> standard based on 1 manufacturers [sic] piece of equipment.  I
> think this work should be abandoned in favor of the more generic
> work that task group E28.06.11 is doing.  To continue [sic] this
> work as it has been going would be to put an ASTM stamp of
> approval on a piece of equipment that most of us have been
> unable to evaluate and it would be unfair to other manufacturers
> of similar type equipment.  I do not suggest any alternative
> wording because I think the project should be abandoned.

(¶56) (brackets in original).

Renaming ABI Test Method As IIT And Publication Of Misleading ISO Report

In an October 2003 article in ASTM *Standardization News*, Edward Tobolski

("Tobolski"), former Instron employee and chair of ASTM E28, stated that any indentation test

technique that collects load versus displacement data must be called an IIT technique and must

refer to the IIT Draft Practice.  (¶67).  The article states "other properties such as yield stress and

strain-hardening characteristics of metals can also be observed, however, the analyses for those

properties have not been developed to the point that they are widely accepted."  (¶67).  In

September, 2004, ASTM issued a ballot for the IIT New Standard Practice.  In the scope,

Tobolski used the term IIT rather than ABI.  (¶68).

In 2006, Tobolski emailed Haggag that the ABI draft standard could be salvaged if the

name was changed to IIT, the RR precision values were deleted, and the analytical equations

were replaced with a reference to the vendor's manual.  (¶70).  Haggag refused to make the

requested changes and instead, contacted the subcommittee on nuclear structural materials's

chairman, Randy Nanstad,[3] to start a new ABI activity.  (¶¶70, 71).  Nanstad would not allow a

---

[3] Mr. Nanstad, alleged employee of Fracture Mechanics Laboratory, is not affiliated with any
Defendant.

ballot of the draft ABI standard unless the name was changed to Instrumented Ball Indentation ("IBI"), which Haggag refused to do and the task group was disbanded. (¶¶74-75).

In February 2009, Tobolski co-authored the article "Advances in Hardness Testing" in the monthly magazine Advanced Materials and Processes (AM&P) wherein he renamed the ABI test method to a Representative Stress Strain method ("RSS"). (¶77). The plaintiff alleges that the article stated the RSS method is part of IIT described in the ISO's Technical Report 29381 ("ISO TR/29381"). (¶¶78). The AM&P magazine is read by more than 36,000 members, whereas the ISO report is available for purchase only from ISO headquarters in Europe. (¶79).

Plaintiff's Attempts To Obtain An ISO Standard For ABI Test Method

In 2001, Sam Low, National Institute of Standards and Technology ("NIST") employee, sabotaged the commissioning of the ABI test method under ISO CV 164/SC 1 on uniaxial testing. (¶94). Low requested a 5-year systematic review of ISO TR/29381, even though such review applied only to issued standards and ISO TR/29381 was not an issued standard, and scheduled the review to overlap with the ISO ABI standard balloting so that voting members believed the proposed standard was the same as ISO TR/29381. (¶95). Low told the ISO secretariat that the proposed ABI standard was the same as ISO TR/29381 and that any new activity on it must be under SC 3 and not SC 1. (¶96). Low also sent the misleading ISO TR/29381 to many of the ISO SC 1 members who were voting on the proposed ABI standard to confuse them into thinking ABI was the same as IIT. (¶97). Tinius Olsen is not alleged to have participated in any of this conduct.

In 2010 at the Colorado meeting, Ruth told the ISO SC 1 Chairman that ABI belonged to SC 3, not SC 1. (¶99). In 2011, Ruth repeated this claim in an email to the SC 1 Chairman. (¶100). Despite the negative publicity by Low and Ruth, the ABI measure received majority approval of the SC 1 P-member countries—the ISO's first requirement for the approval of a new

activity. (¶102). Additionally, two countries—the USA, which was controlled by ASTM, and China—agreed to develop the draft ABI standard, but the ISO requires five countries' agreement to approve a new activity. (¶¶86, 103).

Haggag requested the ISO host a demonstration to show the differences between the ABI and IIT methods and to resolve the issue as to whether the ABI test falls under SC 1 or SC 3. (¶104). Although the ISO acknowledged that a joint meeting must be held to resolve the jurisdiction issue during the Annual Meeting in September, 2011, Ruth, the Head of Delegates with the authority to issue all communications, refused to schedule the joint meeting. (¶¶105-106). Instead, Ruth issued for vote a ballot as to whether the ABI activity should be continued. (¶¶108-109). Ruth reported the ballot results as 4 negative, 2 affirmative, and 10 abstentions, and declined to schedule the demonstration. (¶110). Haggag requested but never received the official ballot results. (¶¶112, 113).

## ARGUMENT

## I.    PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE CONSPIRACY (COUNT I).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations and further citations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotations and further citations omitted).

### A.    Plaintiff Fails To Allege Sufficient Facts To Establish An Agreement.

To state a Section 1 Sherman Act claim, a complaint must contain enough factual matter to suggest that an agreement was made. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). To adequately plead an agreement, a plaintiff must allege either direct or circumstantial

evidence. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 320-321 (3d Cir. 2010). "Asking for plausible grounds to infer an agreement...calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Id. "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Id.

The First Circuit has made clear that in resolving a motion to dismiss a court should employ a two-pronged approach. Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, the court should identify and disregard statements "that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (internal quotations and further citations omitted). The remaining "[n]on-conclusory factual allegations in the complaint must be then treated as true, even if seemingly incredible, and assessed to determine whether they allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The make-or-break standard is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. (further citations omitted).

     1.    *Plaintiff's conclusory allegations of conspiracy should be ignored.*

In Twombly, the U.S. Supreme Court held the allegation that "the [defendants] have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another" was merely a legal conclusion which provided no basis for plaintiff's conspiracy claim. Even under the more relaxed pleading standard in effect prior to Twombly, the First Circuit in allowing a motion to dismiss a Section 1 Sherman Act claim stated "terms like 'conspiracy,' or even 'agreement,' are border-line; they might well be sufficient in

conjunction with a more specific allegation—for example, identifying a written agreement…but a court is not required to accept such terms as a sufficient basis for a complaint". <u>DM Research v. Inc. v. College of American Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999). Similarly, when allowing a motion to dismiss on a Section 1 Sherman Act claim post <u>Twombly</u>, the Third Circuit held the allegation that "the agreement between and among Defendants to reduce, cap and eliminate commissions paid to plaintiffs" is "nothing more than a legal conclusion masquerading as a factual allegation." <u>In re Travel Agent Com'n Antitrust Litigation</u>, 583 F.3d 896, 905 (6th Cir. 2009).

   This Court should ignore the following conclusory statements in resolving Tinius Olsen's Motion to Dismiss: "Defendants agreed, combined and conspired to cause the Defendant ASTM and other international standards-making organizations to shut Plaintiff out of the mechanical testing equipment market by using their positions on national and international organizations to discredit Plaintiff's technology and its innovative techniques" (¶1); "By preventing ATC from acquiring an accepted test method standard for its innovative technique, the Defendants conspired to maintain their monopoly in mechanical testing equipment, in violation of Section 2[4] of the Sherman Antitrust Act, 15 U.S.C. §2" (¶2); and "From early on, the Defendants colluded on their scheme to keep ABI from the marketplace" (¶80). After disregarding these statements, Plaintiff's Complaint is entirely devoid of any evidence of an illegal agreement.

---

[4] This is the only mention in Plaintiff's Complaint of Section 2 of the Sherman Act. The First Cause of Action is labeled "Sherman Act, Section 1, 15 U.S.C. §1" and this Motion addresses Plaintiff's Section 1 claim. Any claim for "conspiracy to monopolize" under Section 2, however, would be barred for the same reasons provided in this motion: i.e., Plaintiff's failure to allege a plausible conspiracy and failure to allege an antitrust injury. <u>See, e.g.</u>, <u>Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance</u>, 123 F.3d 301, 305 (5th Cir. 1997) (an antitrust injury is required under section 1 or section 2 of Sherman Act); <u>Paladin Assocs., Inc. v. Montana Power</u>

2.    *Plaintiff fails to allege any direct evidence of an illegal agreement.*

Direct evidence of a conspiracy is "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." Ins. Brokerage, 618 F.3d at 324 n. 23 (further citations omitted).

Plaintiff's 133 paragraph Complaint fails to allege any direct evidence of an illegal agreement. Plaintiff alleges at paragraph 85: "[b]ecause issues were always discussed outside the formal committee before a formal vote, it is reasonable to assume the conspirators met to collude on their votes before every action taken against Plaintiff and the ABI testing method." This allegation is nothing more than sheer speculation that Tinius Olsen at various unspecified times may have discussed with other Defendants its votes on Plaintiff's ABI testing method outside the formal committee prior to every formal vote. This conclusory and speculative allegation provides no direct evidence of conspiracy. See Twombly, 550 U.S. 544, 565 n. 10 (noting complaint's references to an agreement would not have survived motion to dismiss because "pleadings mentioned no specific time, place, or person involved in the alleged conspiracies" and were merely conclusory allegations); Travel Agent Com'n Antitrust Lit., 583 F.3d at 905 (alleging only opportunity to conspire at trade association meetings does not support inference of illegal agreement under Sherman Act); see also DM Research, 170 F.3d at 56 ("discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations").

Similarly, the allegations in Paragraph 82 of Plaintiff's Complaint do not allege direct evidence of conspiracy and are not pled against Tinius Olsen. Plaintiff alleges "at the March 2 &

---

Co., 97 F. Supp. 2d 1013, 1039 (D. Mt. 2000) (standard for proving conspiracy under Sherman Act is same under sections 1 and 2).

3, 1998 meeting of E28.06.11 on IIT Practice at NIST [National Institute of Standards and Technology] in Gaithersburg, Md., Tobolski, Low and others devised a plan to disband the ABI Task which they executed during the May 1998 meeting in Atlanta GA." There is no allegation, however, that Tinius Olsen participated in this meeting and/or in the alleged plan to disband the ABI Task. Even if this allegation were directed at Tinius Olsen, it does not plausibly suggest that an illegal agreement was made because it does not contain sufficient facts concerning the nature of the illegal agreement, the purpose of the May 1998 meeting, and/or how the illegal agreement was executed during the May 1998 meeting. In fact, there is no other mention of the May 1998 meeting in Plaintiff's verbose 133 paragraph Complaint which does not appear to be relevant given the ABI Task did not exist in 1998 and was two years later (¶47), the ASTM proceedings to obtain a standard continued until at least 2007 (¶86), and the ISO proceedings began in 2006, eight years after the May 1998 meeting (¶88).

     3.    *Defendants' parallel conduct is not indirect evidence of a conspiracy.*

Circumstantial evidence of parallel behavior must be pled in "a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Twombly, 550 U.S. at 557. An allegation of parallel conduct and a bare assertion of conspiracy will not survive a motion to dismiss:

> Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a §1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action. The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief'….an allegation of parallel conduct is thus much like a naked assertion of conspiracy in a §1 complaint: it gets the complaint close to stating a claim, but without some

> further factual enhancement it stops short of the line between
> possibility and plausibility of 'entitlement to relief.'

Id. at 556-557.

In Twombly, subscribers of local telephone and/or high speed internet services alleged that local exchange carriers ("ILECs") conspired to restrain trade by engaging in parallel conduct in their respective service areas to inhibit the growth of upstart competitive local exchange carriers ("CLECs"). The allegation of conspiracy was based on parallel conduct that each ILEC engaged in to prevent competition from CLECs within their respective local telephone and/or high speed internet services markets and from ILECs' common failure to pursue attractive business opportunities in contiguous markets where they possessed substantial competitive advantages. Id. at 550-551. The U.S. Supreme Court held the complaint did not plausibly state a conspiracy claim because "there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway; so natural, in fact, that if alleging parallel decisions to resist competition were enough to imply an antitrust conspiracy, pleading a §1 violation against almost any group of competing businesses would be a sure thing." Id. at 566.

Plaintiff's conspiracy claim comes up short. The allegation of conspiracy is based solely upon the inference that because the alleged conspirators allegedly voted similarly with respect to Plaintiff's ABI testing method, there must have been an illegal agreement to do so. (¶85). Just as in Twombly, an inference of illegal agreement based solely upon parallel conduct is insufficient to survive a motion to dismiss. Moreover, Plaintiff assumes, without any basis, that Tinius Olsen and other Defendants voted negatively to the ballot Ruth issued in July, 2011 (asking whether ABI activity should be continued in ISO). (¶¶107-114). All that Plaintiff knows about the ballot results is what Ruth reported: 4 negative, 2 affirmative, and 10 abstention votes. (¶110). Plaintiff requested but never received the official ballot results. (¶¶110, 113). Plaintiff's

assumption that Tinius Olsen and other Defendants voted negatively provides no support for Plaintiff's conspiracy claim.

      4.    *Plaintiff fails to allege any circumstantial evidence of conspiracy known as "plus factors".*

"[A] §1 plaintiff's offer of conspiracy must rule out the possibility that the defendants were acting independently." <u>Twombly</u>, 550 U.S. at 554.  To do this, a plaintiff relying on parallel conduct to establish an agreement must establish at least one "plus factor".  "Plus factors" are evidence pointing toward conspiracy or proxies for direct evidence of an agreement. <u>White v. R.M. Packer Co., Inc.</u>, 635 F.3d 571, 577 (2011); <u>see also</u> <u>Ins. Brokerage</u>, 618 F.3d at 323 ("plus factors" are "facts that tend to ensure that courts punish concerted action instead of the unilateral independent conduct of competitors").  Courts have identified the following "plus factors" as circumstantial evidence of an agreement: (1) motive; (2) acting contrary to one's interests; and (3) evidence implying a traditional conspiracy. <u>Ins. Brokerage</u>, 618 F.3d at 321–22 (internal quotations and further citation omitted).  The courts have cautioned the first two types of evidence may indicate only that the defendants operate in an oligopolistic market and merely restate the insufficient fact that market behavior is interdependent and characterized by conscious parallelism. <u>Id.</u>  The third factor consists of non-economic evidence "that there was an actual, manifest agreement not to compete which may include proof that the defendants got together and exchanged assurances of common action or otherwise adopted a common plan even though no meetings, conversations, or exchanged documents are shown." <u>Id.</u> (further citations and internal quotations omitted).

      Plaintiff fails to allege any "plus factors" to establish an illegal agreement between Tinius Olsen and any other Defendant to prevent Plaintiff from receiving a standard for its ABI test method.  Plaintiff fails to allege Tinius Olsen's motive in entering into such an illegal agreement.

In fact, Tinius Olsen would have no such motive because "a single negative vote will stop the progress of any draft standard under ASTM regulations". (¶57). Because Tinius Olsen, an ASTM voting member, could with its own negative vote stop the ABI standard test method from proceeding, Tinius Olsen had no motive to enter into an illegal agreement with any other Defendant to prevent Plaintiff from receiving a standard. See Ins. Brokerage, 618 F.3d at 322 n. 20 ("in actual practice, most courts rely on the absence of motivation or offense to self-interest to preclude a conspiracy inference from ambiguous evidence or mere parallelism") (internal quotations and further citations omitted).

Additionally, Plaintiff alleges no evidence that Tinius Olsen acted contrary to its interests. To the contrary, Plaintiff alleges that Tinius Olsen had an economic incentive to stop "any new ABI test method standard from being developed," since "the change would significantly reduce the bulk of [its] profits." (¶¶35, 38). Even assuming Tinius Olsen voted against the promulgation of an ABI standard, such action would have been fully consistent with, not contrary to, its own economic interests. Finally, as explained above, Plaintiff alleges no evidence implying a conspiracy.

> 5.   *Tinius Olsen's participation in ASTM and ISO is not evidence of conspiracy.*

The mere participation in a standard developing organization is not evidence of conspiracy. Greater Rockford Energy and Tech. Corp. v. Shell Oil Co., 998 F.2d 391, 396 (7th Cir. 1993) ("the failure of a private standard-setting body to certify a product is not, by itself, a violation of §1") (further citation omitted); Consolidated Metal Prods., Inc. v. American Petroleum Inst., 846 F.2d 284, 293-294 (5th Cir. 1988) ("a trade association is not by its nature a 'walking conspiracy', its every denial of some benefit amounting to an unreasonable restraint of trade"); Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., 801 F. Supp. 2d 1163,

1197 (D.N.M. 2011) ("merely participating in a standard-setting organization does not amount to an unlawful conspiracy in restraint").

In Greater Rockford Energy, 998 F.2d at 396, manufacturers and sellers of ethanol and gasohol sued eight oil companies alleging they conspired to discriminate against and disparage ethanol and gasohol to eliminate competition in the motor fuel market.  The only evidence suggesting concerted action among the defendants was their common membership in ASTM.  Id. The Seventh Circuit held the allegation that defendants combined in the ASTM to restrain trade by delaying issue of an ASTM motor fuel specification could not survive summary judgment on Section 1 Sherman Act claim where the ASTM did not stray from its normal procedures.  Id.

Similarly, in Neotonus, Inv. v. American Med. Ass'n, 554 F.Supp.2d 1368, 1375 (N.D. Ga. 2007), a medical device maker alleged that the American Medical Association ("AMA") and the American Urological Association ("AUA") conspired to prevent its device from receiving a preferable "Category I" code (recognized and effective) rather than a "Category III" code (new and emerging).  Plaintiff failed to present evidence that reasonably tended to exclude the possibility that the alleged conspirators acted independently.  Id. at 1376.  The evidence showed that each member made a decision on plaintiff's applications based on each member's personal analysis of the information submitted in support of the application, personal research, and the opinions expressed by various medical specialty societies.  Id.  The court stated "the mere consistency between the AMA's and AUA's opinion on the efficacy of [plaintiff's] product does not, standing alone, give rise to an inference of conspiracy."  Id. at 1376-77.

Plaintiff alleges no facts to suggest that Tinius Olsen's statements made or actions taken concerning Plaintiff's application for an ABI standard were anything other than an independent exercise of Tinius Olsen's rights and responsibilities as an ASTM member.  The mere fact that

Tinius Olsen and other Defendants may have voted consistently against the ABI standard on some votes is insufficient to prove a conspiracy under Section 1 of the Sherman Act.

      6.    *The facts alleged are contrary to the existence of a conspiracy.*

A single negative vote will stop the progress of any draft standard under ASTM Regulations. (¶57). As such, there would be no need for Tinius Olsen, an ASTM voting member, to enter into an agreement with anyone to vote against Plaintiff's ABI test method because Tinius Olsen's single negative vote would stop the progress of Plaintiff's draft standard.

Additionally, the United States, whose participation in the ISO on mechanical testing is controlled by ASTM, actually voted in favor of participating in the development of the ISO draft ABI standard. (¶¶86, 103). Voting in favor of the ABI standard is directly contrary to and inconsistent with an illegal conspiracy among Defendants to prevent Plaintiff from obtaining a standard for its ABI test method.[5]

      B.    <u>Plaintiff Fails To Allege Any Antitrust Injury.</u>

To survive a motion to dismiss, "a section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably." <u>Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n</u>, 884 F.2d 504, 507–08 (9th Cir. 1989). "Rather, a claimant must, at a minimum, sketch the outline of [the injury to competition] with allegations of supporting factual detail." <u>Id.</u> at 508. Such allegations must "raise a reasonable expectation that discovery will reveal evidence of" an injury to competition. <u>Twombly</u>, 550 U.S. at 556. Thus, a complaint's allegation of a practice that may or may not injure competition is insufficient to state a claim that is plausible on its face. <u>Id.</u> at 570. "[A]llegations that an agreement has the effect of reducing consumers' choices or increasing prices to consumers does not sufficiently allege an injury to

competition. Both effects are fully consistent with a free, competitive market." Brantley v. NBC Universal, Inc., 2012 WL 1071257, *7 (9th Cir. Mar. 30, 2012) (citing Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 895 (2007)).

As the First Circuit explained:

> a practice is not 'anticompetitive' simply because it harms competitors.... Rather, a practice is "anticompetitive" only if it harms the competitive process...by obstruct[ing] the achievement of competition's basic goals—lower prices, better products, and more efficient production methods.

Town of Concord v. Boston Edison Co., 915 F.2d 17, 21-22 (1st Cir. 1990) (internal citations omitted).

Plaintiff's Complaint is devoid of any allegation that the alleged conspiracy harmed the competitive process. In fact, Plaintiff is the only company that performs the ABI test method (¶28), and the lack of receiving a standard has not prevented Plaintiff from introducing its ABI test method to the market (¶40). Indeed, Plaintiff alleges that within three years of introducing the ABI test method into the market, several pipeline operators adopted Plaintiff's ABI and tensile software programs exclusively. (¶28). The only "harm" that Plaintiff alleges due to its inability to obtain a standard are lost sales to the U.S. Departments of Energy and Transportation. (Id.). Plaintiff's Sherman Act claim should be dismissed because Plaintiff alleges injury to itself only and not to competition. See McGlinchy v. Shell Chem. Co., 845 F.2d 802, 811 (9th Cir.1988) (plaintiffs must plead injury to competition beyond impact on plaintiffs).

C.     Plaintiff's Conspiracy Claim is Time-Barred.

A claim under the Sherman Act must be brought within four years after the cause of action accrues to be timely. 15 U.S.C. § 15b (2000) (emphasis added). A cause of action under

---

[5] There is no allegation that the other countries who voted against the ABI standard in the ISO

Section 1 of the Sherman Act accrues when a defendant commits an act that injures a plaintiff's

business. <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 338 (1971). "In the

context of a continuing conspiracy to violate the antitrust laws ... each time a plaintiff is injured

by an act of the defendants a cause of action accrues to him to recover damages caused by that

act and ... as to those damages, the statute of limitations runs from the commission of the act."

<u>Id.</u> Because this action was filed on January 30, 2012, any act of Tinius Olsen that allegedly

injured Plaintiff must have occurred after January 30, 2008 to be timely. <u>Id.</u> All of the acts

alleged to have been committed by Tinius Olsen after January 30, 2008 are not alleged to have

been illegal and/or alleged to have injured Plaintiff. As set forth above, in 2011, Tinius Olsen

voted in favor of Plaintiff's proposed ABI standard in the ISO. (¶103).

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER G.L. C. 93A (COUNT II).

The basis for Plaintiff's G.L. c. 93A[6] claim is "Defendants' concerted and individual

efforts to prevent the promulgation of an ABI standard...." (¶127).

### A.    Plaintiff's 93A Claim Is Time-Barred.

Plaintiff's G.L. c. 93A claim is governed by a four year statute of limitations. G.L. c.

260, §5A. Plaintiff's G.L. c. 93A claim is based upon the same conduct that underlies Plaintiff's

Section 1 Sherman Act claim. To be timely, Tinius Olsen's alleged unfair and deceptive conduct

must have occurred after January 30, 2008. Because all of the acts alleged to have been

---

were part of the alleged conspiracy and/or were influenced in any way by Tinius Olsen.
[6] Plaintiff identifies its second cause of action as G.L. c. 93A, §2. Section 2 of G.L. c. 93A,
however, defines unfair and deceptive conduct and does not provide Plaintiff with a basis to sue.
The sections under which Plaintiff could assert its G.L. c. 93A claim are §§ 9 and 11. A business
must bring its claim under G.L. c. 93A, §11, whereas an individual who participates in
commercial transactions on a private, nonprofessional basis must assert his claims under G.L. c.
93A, §9. <u>Gargano & Associates, P.C. v. John Swider & Associates</u>, 55 Mass. App. Ct. 256, 262
(2002). Plaintiff's G.L. c. 93A claim must be brought under §11 because Plaintiff is a business
and not a private individual.

committed by Tinius Olsen after January 30, 2008 are not alleged to have been illegal and/or alleged to have injured Plaintiff, Plaintiff's G.L. c. 93A claim is time-barred.

B.    Plaintiff's 93A Claim Fails Because Plaintiff Fails To Allege A Conspiracy.

Plaintiff's G.L. c. 93A claim is based upon the same conduct that underlies Plaintiff's Section 1 Sherman Act claim.  G.L. c. 93A, § 11 provides that the court shall be guided in its interpretation of unfair methods of competition by the Massachusetts Antitrust Act ("the Act"). See Ciardi v. F. Hoffman-LaRoche, Ltd., 436 Mass. 53, 62-63 (2002) (observing that antitrust claims under G.L. c. 93A, §11 are governed by state and federal antitrust principles).  The Act, G.L. c. 93, §1, requires that it be interpreted "in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable."  Because Plaintiff fails to allege a conspiracy claim under the Sherman Act, Plaintiff's G.L. c. 93A, §11 claim based upon the same conduct fails.  Egan v. Athol Mem'l Hosp., 971 F. Supp. 37, 47 (D.Mass.1997) (upon dismissal of federal antitrust claims, G.L. c. 93A claims offering no independent evidence of unfair or deceptive trade practices must also be dismissed).

C.    No Conduct Occurred Primarily And Substantially In Massachusetts.

G.L. c. 93A, §11 provides "[n]o action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."  In determining whether a case complies with §11's special requirement, the court focuses on whether the center of gravity of the circumstances underlying the claim is primarily and substantially within Massachusetts.  Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 473 (2003).  "Only the allegedly unscrupulous conduct is relevant in determining whether the action occurred primarily and substantially within Massachusetts."

Renwood Winery, Inc. v. Landmark Label, Inc., 64 Mass. App. Ct. 1113, 2005 WL 2757537 *8

(2005).

The allegedly deceptive conduct that forms the basis of Plaintiff's G.L. c. 93A claim is

"Defendants' concerted and individual efforts to prevent the promulgation of an ABI

standard...." (¶127).  Plaintiff's Complaint is entirely devoid of any allegation that Tinius

Olsen's allegedly deceptive behavior occurred in Massachusetts.  Tinius Olsen's principal offices

are located in Pennsylvania. (¶10).  Plaintiff's principal offices are located in Tennessee. (¶5).

The only other states mentioned in Plaintiff's Complaint in connection with the alleged

conspiracy are Maryland, the location of a 1998 meeting at NIST where Tobolski (Instron) and

Low (NIST) allegedly devised a plan to disband the ABI task (¶82); Georgia, where they

allegedly executed the plan in May 1998 (¶82); and Colorado, where Ruth allegedly told the ISO

SC 1 chairman that ABI belonged to SC 1, not SC 3 (¶99).  The only connection to

Massachusetts is that it is the location of Defendant Instron's principal offices. (¶9).  In fact, of

the 133 paragraphs in Plaintiff's Complaint, Massachusetts is mentioned only once in the

paragraph asserting the location of Instron's principal offices.  Because there is no allegation that

Tinius Olsen's allegedly deceptive conduct occurred primarily and substantially in

Massachusetts, Plaintiff's G.L. c. 93A, §11 claim must be dismissed.  See Reicher v. Berkshire

Life Ins. Co. of America, 2002 WL 31426758, **1-2 (D. Mass. Oct. 29, 2002).

## III.   THE COMMERCIAL DISPARAGEMENT CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE TINIUS OLSEN PUBLISHED THE ALLEGEDLY DISPARAGING REPORT (COUNT III).

Plaintiff's commercial disparagement claim is based upon the publication of a February

2009 article in AM&P magazine that referenced an ISO Report, ISO TR/29381. (¶116).

Regardless of which state's substantive law applies,[7] Plaintiff's claim should be dismissed because Plaintiff fails to allege that Tinius Olsen published the article or ISO TR/29381.

To prevail on a common law commercial disparagement claim, a plaintiff must prove the defendant published a false statement. Bose Corp. v. Consumers Union of U.S., Inc., 692 F.2d 189, 192-195 (1st Cir. 1982) (Massachusetts law); Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 570 Pa. 242, 247 (Pa. 2002) (Pennsylvania law). Plaintiff's Complaint is devoid of any allegation that Tinius Olsen published the article or ISO TR/29381. Plaintiff alleges that defendants other than Tinius Olsen were involved with publishing the article and ISO TR/29381. (¶¶77-79, 97). Because there is no allegation Tinius Olsen published the article or ISO TR/29381, Plaintiff's commercial disparagement claim against Tinius Olsen should be dismissed.

## CONCLUSION

WHEREFORE, Defendant Tinius Olsen International Company respectfully requests this Court to Allow its Motion to Dismiss Plaintiff's Complaint and dismiss with prejudice all claims pled against Tinius Olsen International Company.

---

[7] The only states' substantive laws that could apply to Plaintiff's commercial disparagement claim are Massachusetts (location of this action), Tennessee (Plaintiff's location), Illinois (Defendant Instron's location), or Pennsylvania (Tinius Olsen's and ASTM's location). There is no separate cause of action for commercial disparagement under Tennessee law. Kansas Bankers Sur. Co. v. Bahr Consultants, Inc., 69 F.Supp.2d 1004, 1014 (E.D. Tenn., 1999) ("[t]o date, disparagement of quality or trade libel has not been recognized in Tennessee as a separate cause of action"). It is unclear whether a cause of action for commercial disparagement exists under Illinois law. Cf. Becker v. Zellner, 684 N.E. 2d 1378, 1399 (Ill. App. 1997) ("[a]ccording to precedent from this district, commercial disparagement is not a viable cause of action") with Strange v. Collins, No. 04-4017, 2007 WL 757824, *1 (C.D. Ill. Mar 08, 2007) (concluding claim for commercial disparagement could go forward). If such a cause of action exists, it is unclear what the cause of action elements would be. See Strange, 2007 WL 757824 *1.

TINIUS OLSEN INTERNATIONAL
COMPANY,

By its attorneys,

*/s/ Kevin C. Cain*
Harvey Weiner, BBO# 519840
Kevin C. Cain, BBO# 550055
Jill M. Brannelly, BBO# 655474
Peabody & Arnold, LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100

## CERTIFICATE OF SERVICE

I, Kevin C. Cain, hereby certify that on this 1ST day of June, 2012, I served the within

Memorandum in Support of Motion to Dismiss, by causing a copy thereof to be sent

electronically to the registered participants in this case, as identified on the Notice of Electronic

Filing.

*/s/ Kevin C. Cain* _____

PABOS2:KCAIN:768319_1

21