# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ADVANCED TECHNOLOGY
CORPORATION, INC.,

        Plaintiff,

   v.

INSTRON, INC., TINIUS OLSEN
INTERNATIONAL CO., MTS SYSTEMS
CORPORATION, and ASTM
INTERNATIONAL,

        Defendants.

Case No. 1:12-CV-10171-JLT

# MEMORANDUM IN SUPPORT OF
# DEFENDANT INSTRON'S MOTION TO DISMISS

Mark S. Popofsky
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005-3948
(202) 508-4600
(202) 508-4650 (fax)
*Admitted Pro Hac Vice*

Jane E. Willis (BBO # 568024)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
(617) 951-7050 (fax)

*Attorneys for Instron, a division
of Illinois Tool Works Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

BACKGROUND ...........................................................................................................3

    A.    The Parties and ATC's ABI Mechanical Testing Method..........................3

    B.    ATC's Conclusory Allegations of a Conspiracy to Exclude ABI ..............4

    C.    ATC's Haggag Fails to Pursue the Standard-Development Path ASTM Offered ...........................................................................................................5

    D.    ATC Fails to Obtain an ISO Standard For Reasons Unrelated to the Alleged Conspiracy.....................................................................................7

    E.    ATC's Conclusory Allegations of False Statements ..................................7

    F.    ATC's Failure to Allege Any Cognizable Harm .......................................8

    G.    ATC's Claims and Relief Sought ...............................................................8

ARGUMENT...................................................................................................................8

I.    THE COURT SHOULD DISMISS ATC'S SHERMAN ACT CLAIM (COUNT I) BECAUSE ATC LACKS ANTITRUST STANDING.......................9

    A.    ATC Cannot Assert Antitrust Injury From Failure to Develop a Standard that Would Have Eliminated Competition ...................................9

    B.    ATC Also Lacks Antitrust Standing Because the FAC Alleges no Cognizable Harm Caused by the Challenged Conduct............................10

II.    THE COURT SHOULD DISMISS ATC'S SHERMAN ACT CLAIM (COUNT I) BECAUSE ATC MAKES NO PLAUSIBLE ALLEGATION OF CONSPIRACY ..................................................................................................12

III.    THE COURT SHOULD DISMISS ATC'S CHAPTER 93A CLAIM (COUNT II) FOR FAILURE TO ALLEGE CONDUCT OCCURRING PRIMARILY AND SUBSTANTIALLY IN MASSACHUSETTS .....................17

IV.    THE COURT SHOULD DISMISS ATC'S COMMERCIAL DISPARAGEMENT CLAIM (COUNT III) FOR FAILURE TO ALLEGE THE REQUIRED FALSITY OR SPECIAL DAMAGES ...................................17

V.    THE COURT SHOULD RULE ATC'S ANTITRUST AND CHAPTER 93A CLAIMS AGAINST INSTRON BARRED BY THE APPLICABLE STATUTES OF LIMITATION...........................................................................19

CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Addamax Corp. v. Open Software Found., Inc.,*
    888 F. Supp. 274 (D. Mass. 1995) (Tauro, C.J.)...................................................................9, 13

*Addamax Corp. v. Open Software Found., Inc.,*
    964 F. Supp. 549 (D. Mass. 1997) (Tauro, C.J.), *aff'd*, 152 F.3d 48 (1st Cir. 1998) .... 2, 10-12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................... 8, 13-14

*Atlantic Richfield Co. v. USA Petroleum Co.,*
    495 U.S. 328 (1990) ...................................................................................................9

*AVX Corp. v. Cabot Corp.,*
    600 F. Supp. 2d 286 (D. Mass. 2009) .......................................................................12

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................2, 8, 12-13, 16-17

*Bristol-Myers Squibb Co. v. Copley Pharm., Inc.,*
    144 F. Supp. 2d 21 (D. Mass. 2000) (Tauro, J.) ......................................................12

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977)............................................................................................ 1, 9-10

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
    479 U.S. 104 (1986)...................................................................................................9

*Dulgarian v. Stone,*
    652 N.E.2d 603, 420 Mass. 843 (1995) ....................................................................18

*Franklin v. Ciroli,*
    865 F. Supp. 940 (D. Mass. 1994) (Tauro, C.J.).....................................................17

*Golden Bridge Tech., Inc. v. Motorola, Inc.,*
    547 F.3d 266 (5th Cir. 2008) ....................................................................................15

*In re Baseball Bat Antitrust Litig.,*
    75 F. Supp. 2d 1189 (D. Kan. 1999).........................................................................10

*In re Blood Reagents Antitrust Litig.,*
    756 F. Supp. 2d 637 (E.D. Pa. 2010) .......................................................................15

*In re Text Messaging Antitrust Litig.,*
    630 F.3d 622 (7th Cir. 2010) ....................................................................................15

*In re Travel Agent Comm'n Antitrust Litig.*,
  583 F.3d 896 (6th Cir. 2009) .................................................................................16

*Kochert v. Greater Lafayette Health Servs., Inc.*,
  463 F.3d 710 (7th Cir. 2006) .................................................................................11

*Mac-Gray Servs., Inc. v. Automatic Laundry Servs. Co.*,
  No. 04-2640, 2005 WL 3739853 (Mass. Super. Dec. 20, 2005) ............................18

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ...............................................................................................13

*Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*,
  801 F. Supp. 2d 1163 (D.N.M. 2011) ...............................................................13, 15

*Rambus Inc. v. FTC*,
  522 F.3d 456 (D.C. Cir. 2008) ..............................................................................11

*RSA Media, Inc. v. AK Media Group, Inc.*,
  260 F.3d 10 (1st Cir. 2001) ....................................................................................11

*SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*,
  48 F.3d 39 (1st Cir. 1995) ......................................................................................10

*Sullivan v. Tagliabue*,
  25 F.3d 43 (1st Cir. 1994) ................................................................................10, 12

*Travelers Supply, Inc. v. Hilton Head Labs, Inc.*,
  No. 07-30175, 2008 WL 5533454 (D. Mass. Dec. 23, 2008)................................17

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
  No. 11-4574, 2012 WL 33075 (E.D. Pa. Jan. 6, 2012)..........................................14

*White v. R.M. Packer Co.*,
  635 F.3d 571 (1st Cir. 2011) ..................................................................................16

**STATUTES**

15 U.S.C. § 15b.................................................................................................................19

Mass. Gen. Laws ch. 93A, § 11 .......................................................................................17

Mass. Gen. Laws ch. 260, § 5A .......................................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)......................................................................................................8

Restatement (Second) of Torts (1977) .............................................................................18

## **INTRODUCTION**

This suit is a misguided effort by a disappointed competitor to convert its failure to convince two standards bodies to develop a testing standard based specifically on its proprietary technology into an antitrust, unfair competition, and commercial disparagement lawsuit.

Plaintiff Advanced Technology Corporation, Inc. ("ATC") attempts to paint the picture of a 15-year conspiracy by manufacturers of tensile testing equipment to prevent development of standards covering Automated Ball Indentation ("ABI"), ATC's alternative testing technique. The defendants' alleged scheme succeeded, ATC's story runs, because two standards organizations, the American Society for Testing and Materials ("ASTM") and the International Standards Organization ("ISO"), declined to develop or adopt standards assertedly necessary for ABI to obtain broad commercial acceptance. But the actual facts alleged in ATC's First Amended Complaint ("FAC") do not support – and, in fact, contradict and fatally undermine – ATC's claims against Instron:

ATC's sole federal claim, for an unlawful conspiracy under Section 1 of the Sherman Act, fails because the FAC lacks facts necessary to allege the essential elements of antitrust injury, antitrust standing, and conspiracy. First, the FAC fails to allege antitrust injury because the harm ATC asserts is not an "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). ATC, the FAC discloses, elected only to pursue standards that excluded alternatives to its proprietary ABI technology. Deprivation of an opportunity to ***eliminate*** competition, however, is not the type of injury the antitrust laws are designed to remedy.

Second, ATC fails to allege antitrust standing because the FAC fails to aver that the purported misconduct caused ATC's harm. The FAC contains no allegations that, absent the challenged conduct, either standards organization ***would have*** developed or adopted the ABI-

based standard ATC sought.  Moreover, the FAC demonstrates, ATC shot itself in the foot by refusing to consider alternative standards broader than its proprietary ABI technology.  ATC, in other words, holds responsibility for its own "woes."  *Addamax Corp. v. Open Software Found., Inc.*, 964 F. Supp. 549, 554-55 (D. Mass. 1997) (Tauro, C.J.), *aff'd*, 152 F.3d 48 (1st Cir. 1998). Finally, ATC can identify no lost sales from the defendants' supposed efforts to impede the ABI technology.

Third, all ATC can muster to support its cornerstone allegation of conspiracy is that "logic dictates" one must exist.  This threadbare allegation fails under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which requires allegations that nudge a conspiracy claim over the line from "conceivable" to "plausible."  ATC's myth that some unlawful conspiracy infected every vote concerning ABI technology over a 15-year period, moreover, is directly contradicted by ATC's own allegations that (1) supposed conspirators could block ATC's ABI-only standard without the need to enter into any conspiracy; (2) an ASTM committee with no articulated connection to the conspiracy *also* refused to pursue the ABI-based standard that ATC proposed; (3) a supposed conspirator voted *in favor* of continuing work on ATC's proposed standard; and (4) an employee of defendant Instron, who supposedly conspired against ATC, attempted several times to *assist* ATC in developing a standard covering ATC's technology.  Finally, the FAC contains no facts tying Instron to any conduct (let alone misconduct) relating to ATC's failure to obtain a standard from ISO.

The Court should also dismiss ATC's other two claims.  The Chapter 93A claim fails both because ATC has not alleged any unfair or deceptive practice other than its fatally flawed conspiracy theory and because the FAC does not allege that the challenged conduct occurred primarily and substantially in Massachusetts.  ATC's commercial disparagement claim also fails,

among other reasons, because ATC fails to allege the required elements of falsity and special damages.

Finally, the Court should dismiss all claims against Instron as untimely. The only alleged misconduct relating to Instron the FAC asserts post-January 20, 2008, when the applicable limitation periods began, is the authorship of a single article from which no harm is alleged.

## BACKGROUND

Because the FAC contains ambiguous and convoluted allegations, Instron below recites the material facts the FAC contains. These facts, even when taken as true on this Motion to Dismiss, contradict ATC's conclusory allegation of a far-reaching 15-year conspiracy and omit any allegation that, absent the imagined scheme, either ASTM or ISO would have developed or adopted a standard covering ABI.

### A.     The Parties and ATC's ABI Mechanical Testing Method

Defendants Tinius Olsen International Co. ("Tinius Olsen"), MTS Systems Corporation ("MTS"), and Instron [1] (collectively, the "Manufacturer Defendants") manufacture and sell testing equipment used for measuring the tensile properties of metallic materials, such as pipelines. FAC ¶¶ 9-11. Many mechanical testing methods implicate standards developed by standards organizations. FAC ¶¶ 42-43. ASTM, also a defendant in this case, is responsible for developing numerous standards relating to mechanical testing techniques based on peer review and the consensus of its relevant committees and subcommittees. FAC ¶¶ 7, 42. Employees and former employees of each of the Manufacturer Defendants sit on numerous ASTM committees. FAC ¶¶ 9-11.

---

[1]  The FAC incorrectly alleges that "Instron, Inc." is a "subsidiary of Illinois Tool Works, Inc.," a public company based in Illinois. FAC ¶ 9. As Instron's Rule 7.1 corporate disclosure statement attests (Dkt. 9, filed Apr. 9, 2012), Instron is *an unincorporated division* of Illinois Tool Works Inc.

In the 1980s, ATC developed its own method for mechanical testing called Automated Ball Indentation ("ABI").  FAC ¶ 24.  ATC's president and founder, Fahmy Haggag, obtained a patent in 1989 that assertedly covered "the equipment that performs ABI."  FAC ¶ 25.  ATC commercialized ABI by selling a product called the Stress-Strain Microprobe System, which ATC asserts is "the only equipment that employs ABI technology."  FAC ¶ 40.

### B.    ATC's Conclusory Allegations of a Conspiracy to Exclude ABI

The FAC alleges the Manufacturer Defendants conspired to "squelch" ATC's technology "by stopping any new ABI test method standard from being developed."  FAC ¶ 38.  According to ATC, the Manufacturer Defendants launched a 15-year conspiracy designed to block development of a standard covering ABI in two standards bodies: ASTM and ISO.  The alleged conspiratorial conduct relating to ASTM supposedly lasted from 1997 to 2007, FAC ¶ 86, and the conduct relating to ISO from 2008 to 2011, FAC ¶¶ 90-112.

ATC offers only conclusory factual allegations in support of this supposed long-running conspiracy.  The FAC alleges that certain current and former employees of the Manufacturer Defendants, including Earl Ruth, Tinius Olsen's Director of Technology, FAC ¶ 10, Instron's Edward Tobolski, FAC ¶ 9, and MTS's Jennifer Hay, FAC ¶ 11, sat on relevant ASTM and ISO bodies.  The FAC also references the involvement of another member of ASTM and ISO groups, Sam Low, who is an employee of a non-party, the National Institute of Standards and Technology.  FAC ¶ 49.  The FAC further asserts, with no factual support, that "[s]ome members of the ASTM [Mechanical Testing] committee, including Sam Low and employees of Instron, MTS, and Tinius Ols[e]n, made it a practice to meet outside the regularly scheduled meetings."  FAC ¶ 81.  The FAC leaps to the further conclusion that "[b]ecause issues were always discussed outside the formal committee before a formal vote, *it is reasonable to assume* the conspirators

met to collude on their votes before every action taken against ATC and the ABI technique." FAC ¶ 85 (emphasis added).

Beyond the bare assertion that "logic dictates" a conspiracy existed, ATC's **only** factual allegation in support of its conspiracy claim is that "Tobolski, Low, and others" met in March 1998 and "devised a plan to disband the ABI Task [Group] which they executed during the May 1998 meeting in Atlanta, GA."  FAC ¶ 82.  Notably, this allegation is directly contradicted by ATC's allegation that the ASTM ABI Task Group ***did not even exist until 2000***.  FAC ¶ 47.

Other than this contradicted allegation, the FAC is equally bereft of allegations that Instron coordinated or acted in concert with its supposed conspirators.  ATC alleges that in 2002, Tobolski provided one of three votes – along with Ruth and Low – against ATC's proposed ABI standard.   FAC ¶ 49.   All other descriptions of Tobolski's conduct relate to one-to-one interactions with ATC's president, Fahmy Haggag, FAC ¶¶ 45, 50, 69, 88, or unilateral acts, such as drafting proposed standards or writing a magazine article,[2] FAC ¶¶ 67, 68, 77, 89.  The FAC contains no allegations that Instron participated in the asserted 2008-2011 misconduct supposedly involving ISO.

C.    **ATC's Haggag Fails to Pursue the Standard-Development Path ASTM Offered**

What the FAC concedes – in particular, that ATC sought to pursue a standard that excluded competition to ABI – is as significant as what the FAC omits.  According to the FAC, in 2000 ASTM formed an ABI Task Group (subcommittee E28.06.14) to consider ATC's proposed ABI standard.   FAC ¶¶ 47-56.   Tinius Olsen's Earl Ruth, chairman of ASTM's Mechanical Testing committee, disbanded the Task Group in 2006 because "[he did] not think it

---

[2]  The article Tobolski assertedly wrote for the February 2009 issue of *Advanced Materials & Processes*, FAC ¶¶ 77-79, is the only alleged misconduct ATC attributes to Instron within the limitation periods.  *See infra* Part V.

[was] appropriate for us to create a standard based on 1 manufacturer['s] piece of equipment." FAC ¶ 56.  During the ASTM approval process, Instron's Edward Tobolski *twice* attempted to assist ATC's Haggag, suggesting that the proposed standard could be salvaged if it were broadened to a more general category called Instrumented Indentation Testing ("IIT").  FAC ¶¶ 50, 69-70.  But Haggag, the FAC discloses, steadfastly refused to support any standard that was not specifically modeled after ATC's own proprietary ABI testing method.  FAC ¶¶ 61-70. Although Haggag's refusal to consider a broader standard ended the ABI Task Group, the FAC is bereft of any allegation that, absent the alleged conspiracy, the Task Group *would have* developed a standard specifically modeled on the ABI technique.

Moreover, the FAC acknowledges that a different ASTM committee *not* involved in the supposed conspiracy refused to pursue a standard covering ABI for the very same reason: Haggag's insistence that the standard must explicitly reference ABI.  FAC ¶¶ 71-76.  After Ruth disbanded the first ABI Task Group, Haggag approached ASTM's Nuclear Structural Materials committee, which commissioned a new ABI-related Task Group.  FAC ¶ 71.  Haggag believed that "[w]ith only some minor modifications," the ABI draft standard "should have been ready for immediate balloting."  *Id*.  However, the chairman of the new Task Group, Randy Nanstad, would not permit a vote unless Haggag changed the standard's references to "ABI" technology to the more general term Instrumented Ball Indentation ("IBI").  FAC ¶ 74.  Haggag refused to allow the title change, FAC ¶ 75, and as a result, "ASTM simply disbanded the entire task group," FAC ¶ 76.  Although the FAC contends in conclusory fashion that Nanstad's stance marked a "succe[ss]" for "[t]he conspirators," *id*., the FAC contains *no* allegations to connect Nanstad, his ASTM committee, or his employer (Fracture Mechanics Laboratory of Oak Ridge National Laboratory) to the supposed conspiracy.

**D.     ATC Fails to Obtain an ISO Standard For Reasons Unrelated to the Alleged Conspiracy**

After ATC failed to secure its desired standard from ASTM, Haggag turned his efforts to ISO.  FAC ¶ 86.  The FAC's actual allegations contradict the conclusory assertion that Haggag "once again ran into the ongoing conspiracy against his [ABI] technique."  *Id.*

The FAC concedes that one of the supposed conspirators, Tinius Olsen's Earl Ruth, *helped* ATC by submitting Haggag's new proposed work item to a vote by the United States ISO delegation.  FAC ¶ 92.  The vote succeeded, and the work item moved on to a three-month international ballot by ISO member countries.  *Id.*  The FAC goes on to state that the ABI item achieved the first step for approval when it received majority support from the member countries; but ATC's proposed standard could not proceed further because only two member countries, China and the United States (whose delegation was headed by Earl Ruth, FAC ¶ 106), agreed "to participate in the development of a draft ABI standard," and ISO requires five countries to assent.  FAC ¶¶ 102-03.  The FAC contains no allegations that any of the defendants' efforts, let alone any action by Instron, resulted in or contributed to the failure to obtain the required five-country support.[3]

**E.     ATC's Conclusory Allegations of False Statements**

The FAC's allegation of commercial disparagement appears to rest on a February 2009 article in *Advanced Materials & Processes* magazine assertedly authored by an Instron employee, Edward Tobolski.  FAC ¶ 77.  The FAC avers that this article, titled "Advances in Hardness Testing," discusses IIT without expressly mentioning Haggag's work relating to ABI.

---

[3]   Moreover, although the FAC asserts that Tinius Olsen's Ruth engaged in procedural irregularities in connection with Haggag's subsequent request to demo the ABI technology to interested countries, FAC ¶¶ 105-13, the FAC contains no allegations that, absent this alleged conduct, ISO would have permitted the requested ABI demo to proceed – let alone that ISO would have adopted a standard covering ABI.

FAC ¶¶ 77-78.   This alleged "omission" is the sole support for the allegation that Instron somehow disparaged ATC.  FAC ¶ 79.

### F.      ATC's Failure to Allege Any Cognizable Harm

The FAC lacks any allegations of harm from any of the alleged misconduct.  The FAC baldly asserts, without factual support, that "[i]f the cartel of ATC's competitors had not blocked ABI from receiving a standard test method from ASTM or ISO . . . ABI would now represent a significant share of the testing equipment market."  FAC ¶ 115.   However, the FAC fails to allege that, absent the conduct ATC decries, either ASTM or ISO *would have* developed or adopted any standard covering ABI, let alone the ABI-only standard ATC sought.  ATC has identified no other specific harms from the alleged conspiratorial misconduct.

### G.      ATC's Claims and Relief Sought

Based on the allegations above, ATC brings three claims: a *per se* illegal conspiracy under Section 1 of the Sherman Act (Count I), a violation of Chapter 93A (Count II), and commercial disparagement (Count III).   ATC seeks unspecified damages and equitable relief.  As explained below, the Court should dismiss the FAC in its entirety.

### <u>ARGUMENT</u>

A complaint must be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Conclusory allegations are insufficient to survive dismissal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, well pled facts must "nudge" a purported cause of action from merely "conceivable" to "plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For the reasons explained below, the FAC must be dismissed because its factual allegations do not support the claims purportedly alleged.[4]

---

[4]  Instron also joins in the arguments advanced in the briefs submitted by defendants Tinius Olsen, MTS, and ASTM seeking dismissal of ATC's claims.

I.     **THE COURT SHOULD DISMISS ATC'S SHERMAN ACT CLAIM (COUNT I) BECAUSE ATC LACKS ANTITRUST STANDING**

A.     **ATC Cannot Assert Antitrust Injury from Failure to Develop a Standard that Would Have Eliminated Competition**

To demonstrate antitrust standing, an antitrust plaintiff must allege "antitrust injury," which is to say "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also Addamax Corp. v. Open Software Found., Inc.*, 888 F. Supp. 274, 279-80 & n.7 (D. Mass. 1995) (Tauro, C.J.). An injury will not qualify as "antitrust injury" unless it "stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) ("*ARCO*"). This is because "it is inimical to the antitrust laws to award damages for losses stemming from continued competition." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 109-10 (1986) (internal quotations and alterations omitted). The "antitrust injury" requirement applies with equal force when a plaintiff brings a *per se* claim under Section 1 of the Sherman Act. *See ARCO*, 495 U.S. at 341.

ATC fails to allege "antitrust injury" because the injury ATC claims is a lost opportunity to ***eliminate*** competition. Throughout the standard approval process, ATC steadfastly refused to support any standard not specifically limited to its own proprietary ABI testing method. FAC ¶¶ 61-70. The FAC acknowledges that ATC's president, Fahmy Haggag, holds a patent for "the only equipment that employs ABI technology." FAC ¶¶ 25, 40. Haggag twice rejected attempts by Instron's Edward Tobolski to facilitate development of a standard covering ABI by broadening ATC's proposal to include other technologies. FAC ¶¶ 50, 69-70. As Tinius Olsen's Earl Ruth explained, when he disbanded the first ABI Task Group: "I do not think it is

appropriate for us to create a standard based on 1 manufacturer['s] piece of equipment."  FAC ¶ 56.[5]

ATC's claim of injury from failure to obtain a standard that excluded other technologies is not an "injury of the type the antitrust laws were intended to prevent."  *Brunswick*, 429 U.S. at 489.  The antitrust laws "were enacted for the protection of competition, not competitors."  *Id*. at 488 (internal quotation omitted).  And just as injuries that flow from increased or continued competition do not satisfy the essential "antitrust injury" requirement, neither do injuries that flow from a deprivation of the opportunity to eliminate or restrict competition.  *Cf. In re Baseball Bat Antitrust Litig.*, 75 F. Supp. 2d 1189, 1194-98 (D. Kan. 1999) (no antitrust injury when plaintiff alleged that defendant aluminum bat manufacturers conspired to induce NCAA not to adopt plaintiff's proposed standard that would have eliminated aluminum bats that competed with plaintiff's wooden bats); *SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 48 F.3d 39, 43-44 (1st Cir. 1995) (courts are "unwilling[] to award antitrust damages to one who suffered from pro-competitive" effects of an antitrust violation).

**B.    ATC Also Lacks Antitrust Standing Because the FAC Alleges no Cognizable Harm Caused by the Challenged Conduct**

Antitrust standing also requires a plaintiff to allege that competition-reducing conduct actually caused the plaintiff's harm.  *See Sullivan v. Tagliabue*, 25 F.3d 43, 46 (1st Cir. 1994) (antitrust standing requires a "causal connection between the alleged antitrust violation and harm to the plaintiff"); *Addamax Corp. v. Open Software Found., Inc.*, 964 F. Supp. 549, 554 (D.

---

[5]  ATC's allegation that the supposed conspirators sought to "discredit" ABI by placing it under a broader standard, FAC ¶ 60, is contradicted by the FAC's admission that the ASTM Nuclear Structural Materials committee – which the FAC cannot connect to the purported conspiracy – *also* refused to vote on an ABI-only standard, FAC ¶¶ 71-75.  ATC's "discredit" allegation also cannot be squared with the FAC's assertion that defendants sought to place ABI within a broader category to "capture" ABI's supposed "benefits."  FAC ¶ 66.

Mass. 1997) (Tauro, C.J.), *aff'd*, 152 F.3d 48 (1st Cir. 1998) (explaining the "causal relationship" requirement).  Here, ATC fails to allege causation for two separate reasons.

First, the FAC contains no allegation of "but for" causation – that, absent the supposed conspiracy, a standard covering ABI ***would have*** been developed or adopted by either ASTM or ISO, let alone the ABI-based standard that ATC sought to obtain.  *See Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 716-18 (7th Cir. 2006) (antitrust claim failed for lack of "but for" causation).  *Rambus Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2008), illustrates the defect that dooms ATC's allegations here.  There, the D.C. Circuit held that a defendant's deceit of a standard-setting body ***did not*** cause competitive harm where the plaintiff (there the FTC) could not show that, absent the asserted misconduct, a different standard ***would have*** been set.  *Id*. at 463-66.  The parallel here is exact.  Because, as explained, ATC makes no allegations that the standard it sought would have been adopted absent the challenged conduct, the FAC fails to allege the connection between conduct and competitive harm required for antitrust standing.  *See also RSA Media, Inc. v. AK Media Group, Inc.*, 260 F.3d 10, 15 (1st Cir. 2001) (upholding dismissal of antitrust claim when plaintiff excluded by circumstances other than the challenged conduct).

Second, the FAC admits that independent factors – in particular, Haggag's insistence on a standard confined to ABI and failure to obtain sufficient support in ISO – caused ATC's failure to garner a standard covering ABI.  The FAC alleges that ASTM's Nuclear Structural Materials committee, led by Randy Nanstad, declined to pursue ATC's proposed standard despite the committee's lack of ***any*** alleged connection with the supposed conspiracy.  ATC's Haggag, rather, shot himself in the foot by refusing to change the name of the standard from ATC's proprietary "ABI" to a broader title encompassing other technologies.  FAC ¶¶ 71-75.  *See also*

*Addamax*, 964 F. Supp. at 554-55 (finding requisite causal connection absent when plaintiff responsible for its own "woes").

With respect to ISO, the FAC admits that ATC's failure to receive support from the requisite five countries doomed ATC's draft standard.   FAC ¶ 108.   The FAC makes no allegation that any of the foreign delegates were part of the supposed conspiracy.   The FAC admits that the United States delegation led by alleged conspirator Earl Ruth voted *in favor* of participating in the ABI draft.   FAC ¶¶ 103, 106.   And the FAC contains no allegations that any action by any of the defendants caused any foreign delegations to withdraw support for continuing work on the proposed standard.   FAC ¶¶ 94-101.   The FAC thus makes no allegation that the defendants' conduct was a "material cause" of ATC's injury.   *Addamax,* 964 F. Supp. at 554 (internal quotation omitted); *see also Bristol-Myers Squibb Co. v. Copley Pharm., Inc.*, 144 F. Supp. 2d 21, 24-25 (D. Mass. 2000) (Tauro, J.) (denying recovery where plaintiff's failure to receive regulatory approval and actions of another competitor – not defendant's conduct – caused alleged harm).[6]

## II.   THE COURT SHOULD DISMISS ATC'S SHERMAN ACT CLAIM (COUNT I) BECAUSE ATC MAKES NO PLAUSIBLE ALLEGATION OF CONSPIRACY

ATC's Sherman Act claim must also fail because the FAC does not contain any non-conclusory factual allegations that plausibly suggest the existence of a conspiracy.   *See Twombly*, 550 U.S. at 570.   The "crucial question" in a Section 1 Sherman Act claim is "whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit

---

[6]  ATC's Sherman Act claim separately requires dismissal for failure to allege non-speculative damages.   *See Sullivan*, 25 F.3d at 46 (antitrust standing requires non-speculative damages). ATC's allegations of lost sales from any conduct is wholly speculative, particularly because the adoption of ATC's proposed standard absent the challenged conduct itself is wholly speculative. Put simply, ATC's antitrust damages allegations, founded on "no more than pure speculation and guesswork," are "insufficient as a matter of law."   *AVX Corp. v. Cabot Corp.*, 600 F. Supp. 2d 286, 293 (D. Mass. 2009) (internal quotations omitted).

or express." *Id*. at 553 (internal quotations and alterations omitted); *Addamax*, 888 F. Supp. at 279 ("The essence of every § 1 claim is a combination or some form of concerted action between at least two legally distinct entities." (internal quotation omitted)).  To allege an agreement, a plaintiff must plead facts showing "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (internal quotation omitted).  An antitrust claim must be dismissed where a plaintiff's only supporting factual allegations are "not only compatible with, but indeed . . . more likely explained by, lawful, unchoreographed free-market behavior."  *Iqbal,* 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567); *see also Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*, 801 F. Supp. 2d 1163, 1193 (D.N.M. 2011) (dismissing Sherman Act § 1 conspiracy claim where plaintiff relied on "factual allegations of conduct that [wa]s equally consistent with lawful conduct").

Here, the FAC contains no allegations plausibly suggesting that any conspiracy existed, let alone a conspiracy extending over 15 years and multiple standards bodies.  As an initial matter, ATC fails to explain **why** the Manufacturer Defendants needed to conspire to thwart an ABI-focused standard.  According to the FAC, even **one** negative vote sufficed to prevent a standard's passage.  FAC ¶ 57.  It is not surprising, then, that the FAC contains no facts that directly allege a conspiracy.  Although the FAC baldly asserts a conspiracy existed, FAC ¶ 85, mere "labels and conclusions" do not suffice.  *Twombly*, 550 U.S. at 555; *see also id*. at 557 ("[T]erms like 'conspiracy,' or even 'agreement' . . . might well be sufficient in conjunction with a more specific allegation . . . but a court is not required to accept such terms as a sufficient basis for a complaint."  (internal quotation omitted)).

The FAC's allegations, moreover, do not support an inference of conspiracy.  On the contrary, the allegations here are "not only compatible with, but indeed . . . more likely explained by, lawful, unchoreographed free-market behavior."  *Iqbal,* 556 U.S. at 680.  *All* of the actions allegedly taken by the supposed conspirators to impede the ABI standard are more explicable by independent – that is, non-conspiratorial – conduct.  If, as ATC avers, each of the Manufacturer Defendants had an incentive to block the proposed ABI standard, then their alleged efforts to slow or halt the progress of that standard are fully consistent with independent conduct.  This includes, among other conduct alleged: Earl Ruth's decision to disband the first ABI Task Group, FAC ¶ 56; the alleged anti-ABI statements made by an MTS employee at an ASTM meeting, FAC ¶ 51; and the supposed conspirators' votes against, and other actions supposedly undertaken to undermine, ABI-focused standards, FAC ¶¶ 48, 110.  Here, as in other cases dismissing conspiracy claims, the defendants' asserted "conduct is entirely consistent with lawful, independent, and unilateral" action when "each Corporate Defendant" had an "economic interest" in "opposing [the proposed] standard[]."  *TruePosition, Inc. v. LM Ericsson Tel. Co.*, No. 11-4574, 2012 WL 33075, at *24 (E.D. Pa. Jan. 6, 2012).

Furthermore, the specific acts the FAC attributes to Instron's Tobolski involved no coordination or concerted action with the other defendants.  FAC ¶¶ 45, 50, 67-69, 77-79, 88-89.  Because, according to ATC, each Manufacturer Defendant had a motive to impede the ABI standard, each of Tobolski's acts allegedly designed to hinder the standard is plainly more likely explained as independent conduct.  Aside from a stray allegation that Tobolski and Low planned at a scheduled meeting in March 1998 what to do at the next scheduled meeting in May,[7] the

---

[7]  According to the FAC, "Tobolski, Low, and others devised a plan to disband the ABI Task [Group] which they executed during the May 1998 meeting in Atlanta, GA."  FAC ¶ 82.  But this

only allegation of Tobolski supposedly acting in concert with others involved his casting one of three negative votes in the first ASTM ballot respecting the ABI standard.  FAC ¶ 57.  All this conduct is entirely consistent with each Manufacturer Defendant acting in its ***own*** interest not to support a standard based solely on ABI.  *See Plant Oil*, 801 F. Supp. 2d at 1193 (refusing to infer a conspiracy from "a member of a standard-setting organization stating a position on a draft standard in opposition to an objection" and dismissing complaint); *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 272-73 (5th Cir. 2008) (competitors' parallel efforts to remove competing technology from standard did not support inference of conspiracy when each had "independent financial motive" to support the removal).

This case thus stands in stark contrast to others where courts inferred a "plausible" conspiracy based on facts showing sudden parallel conduct among rivals ***against*** their self interest – that is, conduct explained only by the existence of a conspiracy.  *See, e.g., In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010) (complaint adequately alleged conspiracy because it identified "anomalous behavior" among the alleged conspirators, who simultaneously increased prices in the face of steeply falling costs); *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 637, 642 (E.D. Pa. 2010) (complaint adequately alleged conspiracy because plaintiffs alleged conduct "for which independent self-interest [was] not an obvious alternative explanation" (internal quotation omitted)).  Here, the FAC makes ***no*** allegations of such sudden otherwise inexplicable parallelism; the alleged conduct is consistent with independent action.

The FAC ultimately grounds its conspiracy allegation in pure conjecture.  The FAC avers that the supposed conspirators "made it a practice to meet outside the regularly scheduled

---

is directly contradicted by ATC's allegation that the ABI Task Group ***was not even formed until 2000***.  FAC ¶ 47.

[ASTM] meetings," FAC ¶ 81, and "[g]iven that these meetings were held as a matter of routine, *logic dictates* that the ABI activity was always discussed," FAC ¶ 82 (emphasis added). On this threadbare basis, the FAC leaps to the unsupported conclusion that "it is ***reasonable to assume*** the conspirators met to collude on their votes before *every action* taken against ATC and the ABI technique." FAC ¶ 85 (emphasis added). *Twombly*, however, requires a plaintiff to assert more than guesses based on "logic" and "assum[ptions]." All ATC at bottom alleges is an ***opportunity*** to conspire; but as cases since *Twombly* illustrate, "a mere opportunity to conspire does not, standing alone, plausibly suggest an illegal agreement." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 911 (6th Cir. 2009); *see also White v. R.M. Packer Co.*, 635 F.3d 571, 583-84 (1st Cir. 2011) (communications among defendants did not support conspiracy). The FAC's assertion of opportunity to conspire accordingly cannot support the sweeping claim that the supposed conspirators met to collude "before *every action* taken against ATC and the ABI technique," FAC ¶ 85 (emphasis added), over the course of 15 years.

Finally, the FAC contains allegations that directly ***contradict*** the existence of the supposed conspiracy:

- Supposed conspirator Earl Ruth of Tinius Olsen ***helped*** ATC, first by submitting Haggag's proposed ABI work item to the United States ISO delegation, FAC ¶ 92, and second when the U.S. delegation *he led* voted to "participate" in the development of a draft ABI standard, FAC ¶¶ 103, 106.

- Supposed conspirator Edward Tobolski of Instron twice attempted to ***help*** ATC by adapting the proposed ABI standard to a broader version that was more likely to be adopted. FAC ¶¶ 50, 69-70.

- ATC complains about the existence of a misleading technical report, ISO report TR/29381, which ATC claims "was tailored to boost IIT equipment made by Frontics, Inc., a South Korean company." FAC ¶ 90. But the FAC provides no explanation for why any of the defendants would ***benefit*** from helping Frontics, a ***competitor*** to the Manufacturer Defendants.

For these reasons, ATC's conspiracy claim under Section 1 of the Sherman Act should be dismissed for failure to allege a conspiracy that meets *Twombly*.

## III. THE COURT SHOULD DISMISS ATC'S CHAPTER 93A CLAIM (COUNT II) FOR FAILURE TO ALLEGE CONDUCT OCCURRING PRIMARILY AND SUBSTANTIALLY IN MASSACHUSETTS

A claim under Chapter 93A requires allegations of (i) an unfair or deceptive act or practice; (ii) that occurred primarily and substantially within Massachusetts; and (iii) that inflicted injury. *See, e.g.*, *Franklin v. Ciroli*, 865 F. Supp. 940, 946 n.18 (D. Mass. 1994) (Tauro, C.J.); Mass. Gen. Laws ch. 93A, § 11. The Court should dismiss ATC's Chapter 93A claim because (i) the FAC fails to allege a plausible antitrust conspiracy, *see supra* Part II, the only basis for asserting that the defendants engaged in allegedly unfair and deceptive acts or practices, FAC ¶ 127; (ii) the FAC fails to allege any harm caused by the challenged conduct, *see supra* Part I.B.; and (iii) the FAC fails to allege that the asserted conspiratorial acts "occurred primarily and substantially" in Massachusetts, as required by Chapter 93A. With respect to this last defect, ATC makes **no** allegation that **any** conduct relevant to the alleged conspiracy occurred in Massachusetts at all. The only allegation even **mentioning** Massachusetts asserts that Instron has an office located in the Commonwealth. FAC ¶ 9. That is clearly insufficient to maintain a Chapter 93A claim. *See Travelers Supply, Inc. v. Hilton Head Labs., Inc.*, No. 07-30175, 2008 WL 5533434, at *7-8 (D. Mass. Dec. 23, 2008) (dismissing Chapter 93A claim).

## IV. THE COURT SHOULD DISMISS ATC'S COMMERCIAL DISPARAGEMENT CLAIM (COUNT III) FOR FAILURE TO ALLEGE THE REQUIRED FALSITY OR SPECIAL DAMAGES

A claim for common law commercial disparagement requires a plaintiff to plead, among other things, that (i) the defendant made false statements with knowledge of their falsity or a reckless disregard for the truth; and (ii) the plaintiff suffered special damages, meaning "proved

pecuniary loss."  Restatement (Second) of Torts § 623A & cmt. f (1977) ("Restatement"); *see also* FAC ¶ 133 (referencing special damages).

The FAC fails to allege the "knowing falsity" element.  ATC points to an article attributed to Instron's Edward Tobolski, published in *Advanced Materials & Processes* magazine in February 2009.  FAC ¶¶ 77-79.  ATC alleges that the article "obliquely describe[s] the ABI test method," but fails to reference "Haggag's work."  FAC ¶ 79.  ATC also complains that the article discusses IIT without any reference to ABI.  FAC ¶ 78.  These allegations are a far cry from identifying any knowing or reckless falsehood by Instron, let alone one that somehow discredited ABI, injured ATC, or otherwise qualifies as commercial disparagement.[8]

ATC similarly fails to allege special damages.  The FAC identifies no specific damages lost because of any statements made by Instron.  ATC points to only two specific incidents – relating to Cameron Ltd. in 2008 and Vectren Energy in 2009, FAC ¶¶ 117-18 – but fails to allege that absent any of the conduct the FAC challenges, ATC would have obtained business from those companies.  These allegations do not suffice to allege "proven pecuniary loss."  Restatement, *supra*, cmt. f; *see also Mac-Gray Servs. v. Automatic Laundry Servs. Co.*, No. 04-2640, 2005 WL 3739853, at *4 (Mass. Super. Dec. 20, 2005) ("special damages" mean "the specific, actual, and proven harm done to the plaintiff's economic interests").[9]  To the extent ATC contends that any alleged false statements by the defendants contributed to ASTM's and ISO's failure to develop an ABI-based standard, ATC fails to allege the requisite causation of

---

[8]  Similarly, with respect to the allegation of the existence of a misleading 2008 ISO technical report, the FAC makes only the bare allegation that it "contains numerous errors and falsehoods about ABI," without explaining what any of those falsehoods are.  FAC ¶ 90.

[9]  Instron does not concede that Massachusetts law applies to this claim.  Rather, Instron shows that the claim fails under the Restatement test, which Massachusetts follows.  *See Dulgarian v. Stone*, 652 N.E.2d 603, 609, 420 Mass. 843, 852 (1995).

non-speculative damages, as discussed above in connection with ATC's antitrust claim under the Sherman Act.  *See supra* Part I.B.

## V.   THE COURT SHOULD RULE ATC'S ANTITRUST AND CHAPTER 93A CLAIMS AGAINST INSTRON BARRED BY THE APPLICABLE STATUTES OF LIMITATION

The applicable statutes of limitation bar ATC's Sherman Act and Chapter 93A claims against Instron because the only conduct alleged to support those claims occurred outside of the limitation periods.

Four-year limitation periods apply to both ATC's antitrust claim under the Sherman Act (Count I), *see* 15 U.S.C. § 15b, and ATC's claim under Chapter 93A (Count II), *see* Mass. Gen. Laws ch. 260, § 5A.  Because ATC filed this lawsuit on January 30, 2012, alleged conduct prior to January 30, 2008 cannot be the basis for either of these claims.  Yet the only conduct ATC alleges relating to Instron that could possibly support either claim occurred prior to 2008.  The FAC acknowledges that all of the asserted misconduct relating to ATC's attempts to obtain an ABI standard from ASTM occurred "from 1997 until 2007."  FAC ¶ 86.  And the FAC contains no allegations that Instron played any role in ATC's later (post-2007) attempts to obtain an ABI standard from ISO.  In short, there is ***no*** allegation that Instron participated in any alleged conspiracy after January 30, 2008.

Moreover, no allegations support tolling the limitation periods here.  ATC's averment that it was only put on notice of the purported conspiracy ***after*** the alleged irregularities with the ISO vote in 2011, FAC ¶ 113, is contradicted by the FAC's allegations showing that ATC and Haggag were on notice of the defendants' supposed misconduct over 10 years earlier.  *See, e.g.,* FAC ¶ 36 (1988 letter from Tinius Olsen to Haggag); FAC ¶ 45 (1997 fax from Tobolski to

Haggag).  Accordingly, this Court should dismiss the antitrust and Chapter 93A claims against Instron on the basis of the statutes of limitation.[10]

## **CONCLUSION**

For the reasons stated above, Instron respectfully requests that the Court grant its Motion to Dismiss with prejudice.

Respectfully submitted,

Dated: June 1, 2012

By:  /s/ Jane E. Willis
Jane E. Willis (BBO # 568024)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
(617) 951-7050 (fax)
jane.willis@ropesgray.com

Mark S. Popofsky
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005-3948
(202) 508-4600
(202) 508-4650 (fax)
mark.popofsky@ropesgray.com
*Admitted Pro Hac Vice*

*Attorneys for Instron, a division of Illinois Tool Works Inc.*

---

[10]  ATC's only allegation against Instron within the limitation periods concerns a 2009 magazine article.  There is no allegation that Instron conspired with others in connection with the magazine article.  Moreover, because the allegations relating to that article cannot support relief for reasons just explained, *see supra* Part IV, the Court should dismiss all claims against Instron in their entirety.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 1, 2012.

Dated: June 1, 2012                                      By:  /s/ Jane E. Willis