**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ADVANCED TECHNOLOGY CORPORATION, INC., <br><br>             Plaintiff, <br><br>      v. <br><br> INSTRON, INC., TINIUS OLSEN INTERNATIONAL CO., MTS SYSTEMS CORPORATION, and ASTM INTERNATIONAL, <br><br>             Defendants. | Case No. 1:12-CV-10171-JLT |

### INSTRON'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS ATC'S COMMERCIAL DISPARAGEMENT CLAIM

### INTRODUCTION

Defendant Instron submits this Supplemental Memorandum to address questions posed by the Court in its February 26, 2013 Order (Dkt. No. 47 ¶ 5) regarding Plaintiff Advanced Technology Corporation's ("ATC") sole remaining claim for commercial disparagement, Count III of ATC's Second Amended Complaint ("SAC").[1]  In particular, the Court asked the parties to address (i) whether Massachusetts or Tennessee law applies; (ii) whether Tennessee recognizes a commercial disparagement cause of action; (iii) what the pleading requirements are for commercial disparagement under the relevant state's law; and (iv) what the applicable statute of limitations is for alleging a commercial disparagement claim.  As Instron explains below, the

---

[1] This Memorandum cites to the SAC, filed on July 16, 2012 (Dkt. No. 37-1), because the Court granted ATC's Motion to Amend (Dkt. No. 37) with respect to Count III.  *See* Order of Feb. 26, 2013 (Dkt. No. 47 ¶ 3).

answers to these questions compel dismissal of ATC's commercial disparagement claim and, therefore, termination of this action.

1.  This Court need not determine whether Massachusetts or Tennessee law governs ATC's commercial disparagement claim because that claim fails no matter which state's law applies. Tennessee courts do not recognize a cause of action for commercial disparagement. But courts have made clear that, *were* Tennessee to recognize such a cause of action, Tennessee, like Massachusetts, would follow the Restatement (Second) of Torts § 623A (1977) ("Restatement test"). Because, as Instron explains below, the SAC does not allege essential elements of the Restatement test – including knowing falsity and special damages – there is no conflict between Massachusetts and Tennessee law and thus no need to conduct a choice-of-law analysis. In short, ATC loses either way: If Tennessee recognizes commercial disparagement, ATC's claim fails the governing Restatement test under either Tennessee or Massachusetts law. If Tennessee does not recognize commercial disparagement (and Tennessee law applies), ATC lacks a cause of action. Because ATC's claim is doomed under either state's law, this Court "need not decide which body of law controls." *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 158 (1st Cir. 2005).

2.  The answer to the Court's second question is embedded in the answer to its first: neither Tennessee courts nor federal courts applying Tennessee law have recognized a claim for commercial disparagement. Courts have refrained from defining the scope of Tennessee law because, in each case, the plaintiffs' commercial disparagement claims failed to satisfy one or more essential elements of the Restatement test. *See, e.g., Moore Construction Co. v. Story Eng'g Co.*, No. 01A01-9606-CV-00267, 1998 WL 382198, at *4 (Tenn. Ct. App. July 10, 1998) (stating that the case did "not provide an appropriate vehicle for explicitly recognizing

[commercial] disparagement as a separate tort" under Tennessee law because the Restatement test was not met).

3. The Restatement test – applicable if Massachusetts law governs or if Tennessee recognizes the tort – requires that ATC sufficiently plead five elements: that Instron "(1) published a false statement to a person other than the plaintiff; (2) 'of and concerning' the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss." *Hipsaver, Inc. v. Kiel*, No. SJC-11085, 2013 WL 932155, at *4 (Mass. Mar. 13, 2013). The SAC fails to meet this test. Although this Court suggested that the SAC sufficiently pled the first two elements – based solely on a 2009 magazine article authored by Instron's Edward Tobolski – the Court did not reach the other elements that the SAC fails to allege. *See* February 26, 2013 Memorandum Opinion (Dkt. No. 48) ("Op.") 20. In particular, the SAC is entirely bereft of any allegation that Tobolski acted with the requisite knowledge of any falsity (element three); on the contrary, ATC's allegations and the very e-mail that ATC put before the Court, and that the Court cited in its opinion (Op. 21-22), make clear that Tobolski genuinely believed that IIT encompassed ABI. The SAC also fails to plead the required special damages (element five), because no allegations identify any lost sales caused directly and immediately by publication of the article. In addition, the SAC fails to allege intent to harm (element four).

4. Last, both Massachusetts and Tennessee would apply the same three-year limitations period to commercial disparagement. Because the commercial disparagement claim, which is based solely on the 2009 Tobolski article, fails on its merits, the statute of limitations is irrelevant here.

Accordingly, the answers to the Court's questions dictate dismissal of the sole remaining count of the SAC (Count III). Instron, therefore, will file a renewed motion to dismiss on April 9, 2013, pursuant to the leave this Court granted (Dkt. No. 47 ¶ 5).

## I.    This Court Need Not Determine Whether Massachusetts Or Tennessee Law Governs Because ATC's Claim Fails No Matter Which Law Applies

"An initial task of a choice-of-law analysis is to determine whether there is an actual conflict between the substantive law of the interested jurisdictions." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 73 (1st Cir. 1996). "[W]hen the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls." *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 158 (1st Cir. 2005). Here, the Court "need not decide which body of law controls," *id.*, because ATC's claim fails regardless of whether Tennessee or Massachusetts law governs.

*If* Tennessee *were* to recognize the commercial disparagement tort, no conflict would exist because the elements would be the same as under Massachusetts law. The Restatement (Second) of Torts § 623A (1977), as this Court recognized (Op. 19 n.77), specifies the elements of commercial disparagement in Massachusetts. *See Hipsaver, Inc. v. Kiel*, No. SJC-11085, 2013 WL 932155, at *4 (Mass. Mar. 13, 2013). As explained in Part II below, courts have not recognized a Tennessee commercial disparagement cause of action. However, both Tennessee courts and federal courts applying Tennessee law have held that "if Tennessee courts eventually *do* recognize [commercial] disparagement as an independent cause of action, § 623A of the Restatement (Second) of Torts will define the elements of that tort." *Kansas Bankers Sur. Co. v. Bahr Consultants, Inc.*, 69 F. Supp. 2d 1004, 1014 (E.D. Tenn. 1999) (emphasis added); *see also Moore Construction Co. v. Story Eng'g Co.*, No. 01A01-9606-CV-00267, 1998 WL 382198, at *4 (Tenn. Ct. App. July 10, 1998) (same).

Accordingly, if Tennessee were to recognize a commercial disparagement claim, Section 623A of the Restatement would specify the elements ATC must sufficiently plead no matter which state's law applies. Moreover, as explained below in Part III, the SAC fails to meet the Restatement test because ATC fails to plead at least three essential elements (knowledge of falsity, special damages, and intent to harm). Therefore, if the commercial disparagement tort exists in Tennessee, there is no "actual conflict" because the elements of the claim would be the same, and the claim would fail for the same reasons, under the law of either state. *Levin*, 459 F.3d at 73.

Of course, if Tennessee would ***not*** recognize the commercial disparagement tort, ATC's claim would fail for want of an available substantive cause of action. *See, e.g.*, *Bank of Am. v. Deloitte & Touche, LLP*, No. 062218BLS1, 2006 WL 3725566, at *5 (Mass. Super. Dec. 1, 2006) (dismissing aiding and abetting fraud claim that governing Pennsylvania law "does not recognize"). Therefore, ATC's commercial disparagement claim is doomed either way: If Massachusetts law governs, the claim fails under the Restatement test for the reasons explained below in Part III. If Tennessee law governs, the claim fails either (i) for exactly the same reasons or (ii) because the cause of action does not exist. This Court accordingly "need not decide which body of law controls" because "resolution of [the] choice-of-law determination would not alter the disposition of [the] legal question." *Okmyansky*, 415 F.3d at 158.[2]

---

[2] If the Court found an actual conflict requiring an election between Massachusetts and Tennessee law, Tennessee law would likely govern. Massachusetts conflict-of-law principles control here because Massachusetts is the forum state. *See Levin*, 459 F.3d at 73. The applicable test, provided by the Restatement, *id.* at 74, prescribes that "the applicable law will usually be the local law of the state where the plaintiff has his principal place of business." Restatement (Second) of Conflict of Laws § 151 cmt. c (1971). *See also Davidson v. Cao*, 211 F. Supp. 2d 264, 274 (D. Mass. 2002) (applying the law of the state where the allegedly defamed corporation had its principal place of business). ATC's principal place of business is Tennessee (SAC ¶ 5).

## II.     Tennessee Courts Have Not Recognized A Cause Of Action For Commercial Disparagement

Tennessee courts "have not specifically recognized" a cause of action for commercial disparagement. *Moore*, 1998 WL 382198, at *4. *See also Kansas Bankers*, 69 F. Supp. 2d at 1014 ("To date, disparagement of quality or trade libel has not been recognized in Tennessee as a separate cause of action."). On the contrary, at least one court applying Tennessee law has expressly held that no such cause of action exists, ruling that "[u]nder the common law of Tennessee, there are no causes of action entitled 'Trade Slander' or 'Commercial Disparagement.'" *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 548 F. Supp. 2d 567, 584 (W.D. Tenn. 2007). Although Tennessee recognizes the tort of defamation, *see id.*, and libel of title,[3] no court has extended Tennessee law to recognize commercial disparagement, a distinct tort that concerns "distinct interests." *Hemispherx Biopharma, Inc, v. Asensio*, No. 3970, 2002 WL 31387765, at *7 (Pa. Com. Pl. Oct. 22, 2002).

There is no need for this Court to comment on the scope of Tennessee law here. Courts confronted with the question of whether Tennessee recognizes a commercial disparagement cause of action have judged the cases before them "not [to] provide [] appropriate vehicle[s] for explicitly recognizing [commercial] disparagement as a separate tort" because the plaintiffs failed to make out one or more essential elements under the Restatement test. *Moore*, 1998 WL 382198, at *4. *See also Kansas Bankers*, 69 F. Supp. 2d at 1014-17 (following *Moore* by assuming that the Restatement test would apply "if Tennessee courts eventually do recognize" a commercial disparagement tort, but terminating action because plaintiff failed to demonstrate the required knowledge of falsity); *Seaton v. TripAdvisor, LLC*, No. 3:11-cv-549, 2012 WL

---

[3] *See Langford v. Harrison*, No. M2011-01647-COA-R3-CV, 2012 WL 1657102, at *4 n.4 (Tenn. Ct. App. May 10, 2012); *Desgranges v. Meyer*, No. E2003-02006-COA-R3-CV, 2004 WL 1056603, at *4 n.4 (Tenn. Ct. App. May 11, 2004).

3637394, at *8 (E.D. Tenn. Aug. 22, 2012) (same; lack of false statement).  As explained below, like these cases, the SAC too fails to allege essential elements of the Restatement test.

**III.     The Restatement Test, Which The SAC Does Not Meet, Specifies The Elements Of A Commercial Disparagement Claim Under Either Massachusetts Or Tennessee Law**

The Restatement test, which governs a commercial disparagement claim under either Massachusetts or Tennessee law (assuming Tennessee would recognize the tort), requires a plaintiff sufficiently to plead five elements: that the defendant "(1) published a false statement to a person other than the plaintiff; (2) 'of and concerning' the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss." *Hipsaver*, 2013 WL 932155, at *4; *see also* Restatement (Second) of Torts § 623A (1977).

ATC's complaint fails to meet this standard.  This Court recognized that ATC's Count III for commercial disparagement is confined solely to the SAC's allegations concerning a magazine article that former Instron employee Edward Tobolski authored in 2009 (Op. 20).  Although this Court appears to have concluded that ATC's allegations meet the first and second elements of the Restatement test (*id.*), the SAC fails for several reasons the Court did not reach.

The first element requires the plaintiff to plead that the defendant "published a false statement . . . to a third party." *Hipsaver*, 2013 WL 932155, at *4.  The plaintiff must allege that the "offending statements" are actually "false." *Id*.  Mere statements of the defendant's opinion based on disclosed facts are not actionable. *See Dulgarian v. Stone*, No. 907332, 1994 WL 879631, at *4 (Mass. Super. Feb. 3, 1994), aff'd, 652 N.E.2d 603 (Mass. 1995).  The second element requires allegations that the plaintiff's products were "the direct object of criticism." *Hipsaver*, 2013 WL 932155, at *5 (internal quotation omitted).  Although Instron disagrees that

the SAC's allegations meet either element, Instron assumes for present purposes that the Court concluded otherwise in stating that "the complaint appears to allege that Tobolski falsely conflated ABI with IIT" (Op. 20).[4]

The Court nonetheless should dismiss the SAC for failure sufficiently to plead the third element, which requires a knowing falsity. This element is identical to a defamation claim's requirement of "actual malice," *Hipsaver*, 2013 WL 932155, at *8, and is met, therefore, only if the complaint plausibly alleges that the defendant "either knew that [his] statements were false or had serious doubts about their truth and dove recklessly ahead anyway." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (affirming dismissal of defamation claim and invoking *Iqbal* and *Twombly*); *Hipsaver*, 2013 WL 932155, at *7 (adopting same test for commercial disparagement).

Here, no allegations plausibly suggest that Tobolski "either knew that [his] statements were false or had serious doubts about their truth and dove recklessly ahead anyway." *Schatz*, 669 F.3d at 58. On the contrary, the SAC's allegations attest that Tobolski **genuinely believed** that IIT encompassed other test methods, including ABI:

- SAC ¶ 46: In 1997, Tobolski faxed a letter to ATC's Fahmy Haggag, stating that Tobolski's IIT group should work on a procedure for defining certain facets of the IIT framework and leave other aspects for "future work."

---

[4] ATC merely alleges that the 2009 article "obliquely" described ABI "without reference" to Fahmy Haggag's work (SAC ¶ 83), wrongly "renamed" ABI as "RSS" (SAC ¶ 82), and "stated that the RSS is a part of" IIT, as described in an ISO technical report (SAC ¶ 82). These allegations, which the Court noted are "unclear" (Op. 20), focus on omissions, which do not meet the high standard for a "false" statement. *Egiazaryan v. Zalmayev*, No. 11 Civ. 2670, 2011 WL 6097136, at *5 (S.D.N.Y. Dec. 7, 2011) (statement is not "false" simply because there is not "complete accuracy"). Moreover, the SAC acknowledges that the article **does not reference** either ATC or ABI, and accordingly fails to satisfy the second element: that Tobolski's statement was "of and concerning" ATC's products or services. *See Hipsaver*, 2013 WL 932155, at *5.

- SAC ¶ 71:  In 2003, Tobolski wrote in a magazine article that "any indentation test technique that collects load versus displacement data must be called an IIT technique and must refer to the IIT Draft Practice."

- SAC ¶ 72:  In 2004, Tobolski drafted a new IIT Standard Practice, which "intended that other relevant test methods be able to refer to this practice to establish the basic requirements for accuracy, reproducibility and reporting, etc."

Indeed, the very e-mail ATC brandished to the Court, and which the Court cited in dismissing ATC's conspiracy claim (Op. 21-22), compels the conclusion that Tobolski's statement that allegedly "conflated ABI with IIT" (Op. 20) was based on a genuine belief and did not reflect a knowing falsity.  The e-mail states: "I've ***maintained all along*** that the technology used by Mr. Haggag *is the same as the [IIT] practice* that my task group [] has just balloted. . . . I personally think that the standard should be written because there is a need by [the] industry to have such a test."  Haggag Aff. Ex. B (Dkt. No. 29-3 (emphasis added)).  Having put this document before the Court in support of its complaint, ATC cannot contend, and the SAC does not allege, that Tobolski "knew" a conflation of ABI and IIT to be false or that he harbored "serious doubts about [his statements'] truth and dove recklessly ahead anyway."  *Schatz*, 669 F.3d at 58.  On the contrary, Tobolski "maintained" that ABI was part of IIT "all along."  Haggag Aff. Ex. B (Dkt. No. 29-3).

ATC's commercial disparagement claim also is infirm for the separate reason that it fails to allege the final element: "special damages in the form of pecuniary loss."  *Hipsaver*, 2013 WL 932155, at *4.  ATC must allege "specific, actual and proven harm" to its economic interests.  *Id.* at *10 (quoting *Sharratt v. Housing Innovations, Inc.*, 310 N.E.2d 343, 348 (Mass. 1974)).  Moreover, ATC must allege that the disparaging statement "directly and immediately" caused the asserted harm.  *Hipsaver*, 2013 WL 932155, at *10 (quoting Restatement (Second) of Torts § 633).  *See also Sharratt*, 310 N.E.2d at 348 (explaining that damages must be "actual" and not "assumed" because "the basis for recovery" "must be alleged").  As a case ATC cited to this

Court explains (Dkt. No. 29 at 16), mere "indirect injury" will not suffice. *Egiazaryan v. Zalmayev*, No. 11 Civ. 2670, 2011 WL 6097136, at *10 (S.D.N.Y. Dec. 7, 2011).

The SAC comes nowhere close to alleging sufficiently any harm caused by the 2009 Tobolski article, let alone "specific, actual, and proven harm" that was "directly and immediately" caused by its publication. *Hipsaver*, 2013 WL 932155, at *10. The SAC alleges only that the magazine that published Tobolski's article "is read by more than 36,000 members" (SAC ¶ 83). The SAC does not, however, allege that any of ATC's prospective customers actually read the article or were in any way influenced by it – let alone that the article directly caused ATC to lose any specific sales. Without any such allegations, ATC fails to allege that the 2009 Tobolski article was "a substantial factor influencing [a] specific, identified purchaser in his decision not to buy." *Hipsaver*, 2013 WL 932155, at *11 (internal quotation omitted).

Although the SAC references two purported lost sales in the context of ATC's dismissed conspiracy claim (SAC ¶ 122) – to Cameron Ltd. and Vectren Energy (SAC ¶¶ 123-124) – neither fills this fatal pleading gap. The first of these opportunities, to Cameron Ltd., occurred in 2008 and could not possibly have been affected by Tobolski's article, which was not published until 2009. With respect to Vectren (as to which no time period within 2009 is specified), ATC alleges only that Vectren initially requested a quotation and later "would not continue with the work" because of its "confusion" concerning a technical report about IIT (SAC ¶ 123). ATC does not allege any facts even linking Vectren's supposed "confusion" to the 2009 Tobolski article, let alone any facts plausibly suggesting that the article "directly and immediately" caused Vectren's decision not to purchase from ATC. On the contrary, that Cameron reported a similar confusion about ABI, IIT, and the technical report one year earlier (SAC ¶ 124) – ***before*** publication of the Tobolski article –  is flatly inconsistent with any inference that the 2009 article

had anything to do with, let alone "directly and immediately" caused, ATC's failure to secure a sale to Vectren. In short, because the SAC alleges that the same confusion persisted before and after the article's publication, no alleged facts "nudge[]" any inference that the article had a direct and immediate impact over the line from "conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5]

As demonstrated above, the SAC fails the third and fifth elements of the Restatement test. In addition, the SAC insufficiently alleges the fourth element, which requires allegations that the defendant "intend[ed] for publication of the statement to result in harm to [the] interests of the [plaintiff] having a pecuniary value, or either recognize[d] or should [have] recognize[d] that it is likely to do so." *Hipsaver*, 2013 WL 932155, at *9 (internal quotation omitted). Notably, ATC has not alleged that Tobolski published the 2009 article in order to injure ATC, let alone that Tobolski should have known that publication of the article could or would harm the value of ABI.

---

[5] The same factors render inapplicable the limited "exception" to the requirement that a plaintiff must identify specific lost sales for a "widely disseminated" false statement. *Hipsaver*, 2013 WL 932155, at *11-12. The exception "does not alter or eliminate the plaintiff's burden of establishing that the disparaging publication was the direct and immediate cause of the pecuniary loss." *Id.* at *12. Here, the SAC's admission that confusion over ABI's relationship to IIT **predated** the 2009 Tobolski article alone refutes any inference that the Tobolski article caused any "direct and immediate" harm to ATC. In any event, the exception is unavailable as a matter of law. Because its purpose is "to accommodate plaintiffs who lack one-to-one contact with their own customers and are therefore unable to identify individual recipients of the defendant's message," *id.* at *12 (internal quotation omitted), the exception is inapplicable when a plaintiff can directly contact prospective customers. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d 235, 240 (S.D.N.Y. 1999) ("widely disseminated" exception inapplicable where the plaintiff "maintained a customer list" and "had many years in which to interview lost customers . . . to determine why they stopped shopping" at plaintiff's store). Here, the SAC concedes that ATC could readily identify prospective customers and determine if the Tobolski article played any part in their decision-making. *See* SAC ¶¶ 30, 123-124. But the SAC contains no allegations that the article played any role whatsoever in any alleged lost sales.

-11-

## IV. Both Massachusetts And Tennessee Would Apply A Three-Year Statute Of Limitations To Commercial Disparagement Claims

The Court's fourth question concerned the applicable statute of limitations for commercial disparagement. The limitations period under either Massachusetts or Tennessee law is three years. In Massachusetts, commercial disparagement falls under the general three-year statute of limitations for torts. *See* Mass. Gen. Laws ch. 260, § 2A. Although, as explained, Tennessee has not recognized a commercial disparagement claim, Tenn. Code Ann. § 28-3-105(1) provides a three-year limitations period for all actions "for injuries to personal or real property." *Id*. This three-year limitations period is irrelevant to the disposition of ATC's commercial disparagement claim because, as explained, ATC's allegations fail to meet the governing Restatement test.

## CONCLUSION

For the foregoing reasons, Instron respectfully submits that it is unnecessary for the Court to engage in a choice-of-law analysis, because under either Massachusetts or Tennessee law, ATC's claim for commercial disparagement should be dismissed with prejudice for failure to meet the applicable Restatement test.

Respectfully submitted,

Dated: March 25, 2013

By: /s/ Jane E. Willis
Jane E. Willis (BBO # 568024)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
(617) 951-7050 (fax)
jane.willis@ropesgray.com

Mark S. Popofsky
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005-3948
(202) 508-4600
(202) 508-4650 (fax)
mark.popofsky@ropesgray.com
*Admitted Pro Hac Vice*

*Attorneys for Instron, a division of Illinois Tool Works Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 25, 2013.

Dated: March 25, 2013                                By:  /s/ Jane E. Willis